UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| BOUNKUANG SOUIMANIPHANH, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal  No. 04-129-P-S |
| | ) | |
| | ) | Civil No.   07-63-P-S |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

### RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Bounkuang Souimaniphanh pled guilty on June 23, 2005, to two drug offenses involving cocaine powder and one offense involving crack cocaine.  Souimaniphanh was sentenced on December 19, 2006.  The guideline range was seventy to eighty-seven months but this Court settled on the statutory minimum of sixty months in prison. Souimaniphanh appealed, challenging the court's decision not to afford "safety valve" relief and the First Circuit rebuffed the claim.  In this 28 U.S.C. § 2255 proceeding Souimaniphanh asserts a handful of ineffective assistance claims.  I recommend that the Court deny Souimaniphanh § 2255 relief.

### *Discussion*

**Limitations Regarding 28 U.S.C. § 2255 Review and Souimaniphanh's Burden as Movant**

Souimaniphanh is entitled to  28 U.S.C. § 2255 relief only if her "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack"  28 U.S.C.

§ 2255 ¶ 1.  With respect to this Court's review of Souimaniphanh's § 2255 claims,

summary dismissal is appropriate if her motion: "'(1) is inadequate on its face, or (2)

although facially adequate, is conclusively refuted as to the alleged facts by the files and

records of the case.'" United States v. DiCarlo, 575 F.2d 952, 954 (1978)(quoting Moran

v. Hogan, 494 F.2d 1220, 1222 (1st Cir.1974)). "Thus, the petition is subject to dismissal,

without an evidentiary hearing, if the grounds for relief either are not cognizable under

section 2255 or amount to mere 'bald' assertions without sufficiently particular and

supportive allegations of fact."  Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir.

1992) (citing Moran, 494 F.2d at 1222); see  also United States v. McGill, 11 F.3d 223,

225 (1st Cir.1993) ("When a petition is brought under section 2255, the petitioner bears

the burden of establishing the need for an evidentiary hearing.  In determining whether

the petitioner has carried the devoir of persuasion in this respect, the court must take

many of petitioner's factual averments as true, but the court need not give weight to

conclusory allegations, self-interested characterizations, discredited inventions, or

opprobrious epithets.")(citations omitted),

    Souimaniphanh's 28 U.S.C. § 2255 motion requires that I apply the Sixth

Amendment standard governing the constitutional adequacy of counsels' representation.

The First Circuit summarizes a § 2255 movant's Strickland v. Washington, 466 U.S. 668

(1984) burden as follows:

> An ineffective assistance claim requires the defendant-who bears the
> burden of proof, Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir.1994)-to show (1) that
> counsel's performance fell below an objective standard of reasonableness, and (2)
> that but for counsel's failures, the outcome would likely have been different.
> Strickland v. Washington, 466 U.S. 668, 687 (1984); Cofske v. United States, 290
> F.3d 437, 441 (1st Cir.2002)

Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005).

2

**Souimaniphanh's Ineffective Assistance Claims**

In her first 28 U.S.C.§ 2255 ground,  Souimaniphanh faults counsel for not "following through with appeal request in regards to conviction and sentencing."  (Sec. 2255 Mot. at 3.)  She explains:  "Counsel has failed for over one year to address any of my complaints in regards to the status of the appeal that he was requested to file on behalf of the defendant."  (Id.)  Souimaniphanh's second 28 U.S.C. § 2255 ground faults counsel for making no attempt at sentencing to prove to the court that she did not aid or abet a conspiracy.   (Id. at 4.) With respect to Souimaniphanh's third 28 U.S.C. § 2255 claim, she argues that her attorney should have presented evidence that she was not responsible for the drug quantities attributed to her and which were the predicate for her offense level.  (Id. at 5.)  Her claims in her 28 U.S.C. § 2255 form motion are this skeletal.  Souimaniphanh has filed a response to the United States' motion to dismiss which contains less than one and one-half pages of further explanation of her complaints with counsel's performance and reincarnates an argument that she was entitled to safety valve relief.  I set forth the substance of that response below when discussing the relevant § 2255 claims.

### *Failing to follow through with the appeal*

Souimaniphanh alleges on her 28 U.S.C. § 2255 petition that her attorney failed to follow through with her direct appeal.  In her response to the motion to dismiss she states:

> Once again petitioner would like to reiterate to the courts the lack of communication between attorney, Robert Ruffner and petitioner Souimaniphanh and hopefully help them clearly see why claims of ineffective assistance is valid.
> Although on October 13, 2006, Attorney Ruffner filed a sixteen page appellate brief that challenged a "safety valve" issue on petitioner's behalf, petitioner was not made aware that the filing had actually occurred, nor was she given an opportunity by him to concur or suggest any further

reasons that should be stated in his filing.  The petitioner was only made aware of the actual filing and the ruling when the Government presented its summary of dismissal for petitioner's § 2255.

....

Further aiding the courts to see the ineffective assistance rendered by counsel.  The petitioner not being cognizant that attorney Ruffner had filed the motion on her behalf; therefore, was not aware of this option to exhaust.  Being made aware that she had only 1 (one) year to file her § 2255, petitioner immediately contacted Honorable Judge Margaret J. Kravchuk in writing pleading for assistance in getting an extension to file her § 2255.  When in fact this request was not necessary because a final decision had not been made on her direct appeal until March, 07. Information that was never relayed to petitioner by her attorney or the courts.  Prior to receiving any of the above information petitioner had hurriedly compiled information to the best of her ability in order to submit to the court her § 2255.  When in fact if she had been made aware of the recent decision she could have taken time to seek out legal representation and or other assistance in helping her to properly prepare and present her case to the courts.

(Resp. Mot. Dismiss at 1-2.)

With respect to Souimaniphanh's suggestion that she was not consulted as to the grounds included in her direct appeal: "Because counsel is entitled to exercise professional judgment, [a § 2255 movant] must show that an attack on his sentencing enhancement on direct appeal 'was so obvious and promising that no competent lawyer could have failed to pursue it.'" Cirilo-Munoz, 404 F.3d at 530 (quoting Arroyo v. United States, 195 F.3d 54, 55 (1st Cir.1999)).  Souimaniphanh has not even hinted at what other grounds she would have pressed counsel to include in her direct appeal.  Souimaniphanh also asserts that, because of a failure of communication about her appeal, she rushed into filing this 28 U.S.C. § 2255 motion.  However, Souimaniphanh had more than adequate time within the context of this 28 U.S.C. § 2255 proceeding to set forth her claims and never moved to stay the proceeding, seek time to obtain counsel, or amend her claims. The court has been generous with time and has liberally construed her claims; it cannot

4

devise viable claims out of thin air.   Her contention that she has other tenable appellate

or § 2255 claims simply is not sufficiently particular, much less supported by allegations

of fact.  See McGill, 11 F.3d at 225; Barrett, 965 F.2d at 1186.

### *Failure to challenge her part in the conspiracy at sentencing and failure to challenge attribution of cocaine powder or cocaine base underlying her offense level*

Apropos the evidence of conspiracy charge and drug quantity attribution the

Prosecution Version in Souimaniphanh's case is as follows:

> If the United States were to proceed to trial in this case, it would introduce evidence that beginning in about February 2004 and continuing until on about June 30, 2004 in the District of Maine and elsewhere, defendant Bounkuang Souimaniphanh (a/k/a "Kathy") conspired with Suppachai Vonglakhorn (a/k/a "Bob") and others to distribute and possess with intent to distribute a substance containing cocaine, and on June 30, 2004, Suppachai Vonglakhorn possessed with intent to distribute cocaine and cocaine base (also known as "crack cocaine).
> Specifically, the evidence would be that during the conspiracy Bounkuang Souimaniphanh was selling cocaine to individuals in Maine. Suppachai Vonglakhorn often drove Bounkuang Souimaniphanh to the cocaine deliveries, witnessed some of the cocaine deals, and on occasion delivered cocaine and/or collected money made in payment for cocaine for Bounkuang Souimaniphanh. Drug Enforcement Administration (DEA) S/A Kate Barnard, working in an undercover capacity, obtained powder cocaine from an individual she knew as Charlie, on February 3, 2004, February 11, 2004, February 26, 2004 and March 23, 2004.Charlie was identified as Marut Asdornvuttikrai. Each deal was a direct hand to hand distribution between Asdornvuttikrai and S/A Barnard. During the last deal, as soon as Asdornvuttikrai handed S/A Barnard the cocaine, DEA agents moved in and arrested Asdornvuttikrai. The substances purchased from Asdornvuttikrai were sent to the DEA laboratory for testing. The laboratory found that each item purchased from Asdornvuttikrai contained cocaine. The amounts distributed were 28.3 grams on February 3, 2004, 27.4 grams on February 11, 2004, 55. 8 grams on February 26, 2004, and 109.5 grams on March 23, 2004. Asdornvuttikrai told agents that (1) he had obtained the cocaine he provided to S/A Barnard from Bounkuang Souimaniphanh, (2) Suppachai Vonglakhorn usually drove Bounkuang Souimaniphanh to the transactions with Asdornvuttikrai; (3) transactions took place in front of Suppachai Vonglakhorn; and (4) Asdornvuttikrai gave Bounkuang Souimaniphanh money, which was payment for the cocaine, in Suppachai Vonglakhorn's presence.
> In late June, Rockland Police Department Detective Reginald Walker received information from a confidential source (CI #1) that two

individuals he knew as Bob and Kathy of 140 South Main Street, Rockland, Maine, were selling cocaine. CI #1 told Detective Walker that he had purchased cocaine from them and that they were selling cocaine to an individual named Robert Rein of St. George, Maine. On June 30, 2004, CI #1 called Detective Walker and informed him that Bob and Kathy were going to be taking a shipment of cocaine to Robert Rein's residence. At the time he received this information, Detective Walker, DEA S/A Kate Barnard and TFA Sheila Wetherbee were conducting surveillance at 140 South Main Street. They observed Bob and Kathy get into their vehicle. The agents followed them as they proceeded towards St. George. When they confirmed that the vehicle was heading in the direction of Rein's residence, Detective Walker requested that a marked unit stop the vehicle. Upon stopping the vehicle officers identified the occupants as Suppachai Vonglakhorn (a/k/a "Bob") and Bounkuang Souimaniphanh (a/k/a "Kathy") and asked if they would consent to a search of the car. They both consented to the search of their car and agents found 44.5 grams of cocaine base (also known as "crack cocaine") and 27.3 grams of powder cocaine in the car. The crack was found on the floor of the car between the driver's and passenger's seats, inside a sock. The powder was found inside a sock in Bounkuang Souimaniphanh's purse. Bounkuang Souimaniphanh knew the cocaine base and the cocaine were in the car and intended to distribute them to others. The substances found in the car were sent to the DEA laboratory for testing. The laboratory found that the substances contained cocaine base and cocaine, respectively.

(Prosecution Version at 1-3, Crim. No. 04-129-P-S, Docket No. 75.)  The United States has summarized the relevant evidence at the change of plea hearing (Mot. Dismiss at 3-5), in the Pre-sentence Investigation Report (id. at 6), and at sentencing (id. at 7-9). During sentencing defense counsel argued that there was a sentencing disparity apropos the 100:1 ration between powder and crack cocaine.  (Sentencing Tr. at 36.)  The Court rejected this argument but agreed that a United States v. Booker, 543 U.S. 220 (2005) variance was warranted because Souimaniphanh was holding the crack cocaine for a friend and had no intention to distribute it herself.  (Id. at 46-57, 63-64.)

Neither in her form motion or in her response to the United States' motion to dismiss does Souimaniphanh explain the grounds on which counsel could have further

6

challenged her part in the conspiracy or the attribution of drug quantities. See McGill, 11

F.3d at 225; Barrett, 965 F.2d at 1186.

### *Counsel's performance apropos the safety valve challenge*

Finally, in her response to the United States' motion Souimaniphanh maintains

that she still feels entitled to the benefit of safety valve relief.  Souimaniphanh explains:

> SAFETY VALVE
> Petitioner still feels entitled to the "Safety Valve" because she
> should not be punished for ruling out discussion about family members[']
> activities that she had not witness[ed], ha[v]e direct involvement [in] or
> receive[] profit.  According to USSG § 5C1.2 – which states – "not later
> than time of sentencing, defendant has disclosed information to the
> government."  Court will agree on her disclosure.

(Resp. Mot. Dismiss at 2.)

This was the claim that counsel pressed to the First Circuit in her direct appeal

and the First Circuit rejected it.  The safety valve claim having been decided against her

on direct appeal, Souimaniphanh cannot resurrect it in the context of this collateral attack.

See Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967) ("Although the strict

doctrine of res adjudicata does not apply to § 2255 motions, it is firmly settled that issues

disposed of on a prior appeal will not be reviewed again by way of such a motion.").  To

the extent that she faults the work of appellate counsel in this respect, the First Circuit's

discussion of the claim makes it clear that counsel made a valiant effort to persuade the

Panel of a rather novel sentencing argument, a performance that certainly meets the

Strickland standard. As earlier stated, although Souimaniphanh alludes to a desire to

include other arguments in her appeal, she has not reached any specificity on this issue,

McGill, 11 F.3d at 225; Barrett, 965 F.2d at 1186, even after being given an extension of

time in which to respond to the United States' motion.

*Conclusion*

As reasoned above, I recommend that the Court summarily deny Souimaniphanh

28 U.S.C. § 2255 relief.

<u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 31, 2007

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

8